UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT CURTIS TEALL,

    Petitioner,

v.

ELDON VAIL,

    Respondent.

Case No. 09-cv-0565-TSZ-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Robert Curtis Teall, a state inmate proceeding *pro se*, has filed a 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his convictions in King County Superior Court on three counts of first-degree child rape, one count of first-degree child molestation, and one count of distribution of methamphetamine to a person under age eighteen with sexual motivation. Dkt. No. 5. Respondent has filed an answer opposing the petition. Dkt. No. 10. Petitioner did not file a reply brief. After careful consideration of the petition, the briefs, all governing authorities and the balance of the record, the Court recommends that the petition be DENIED and this case DISMISSED with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

Petitioner married Sharon Fishler in November 1997. At the time of their marriage, Fishler had a two-year-old daughter named C.G. from a previous relationship. Petitioner and Fishler divorced in September 1999, primarily because of Petitioner's illegal drug use. However, the two remained friends.

In mid-2002, Petitioner offered to help Fishler by taking care of C.G. Petitioner frequently visited Fishler's residence, and from July to August 2004, he provided child care for C.G. while Fishler worked. Dkt. No. 12, Exh. 2. C.G. was eight years old during this time. *Id.* After August 2004, Petitioner provided child care for C.G. at Fishler's home periodically during school vacations and after school until the summer of 2005. Dkt. No. 12, Exh. 3.

On July 21, 2005, C.G. told her mother that Petitioner had provided her with drugs and sexually abused her. Dkt. No. 12, Exh. 2. C.G. described the drug as a white powder inhaled through a straw or pen casing after being heated on piece of tin foil. Dkt. No. 12, Exh. 3. C.G. also described multiple instances of sexual abuse, which included sexual intercourse, digital penetration, vaginal penetration with a dildo, and watching pornographic films with Petitioner. *Id.* at 12-13. After C.G.'s disclosure of the sexual abuse and drug use, Fishler took C.G. to the police station to file a report. *Id.* at 8. C.G. was then taken to Harborview Medical Center for a physical exam. *Id.* C.G. was examined by two physicians, one examined her in the emergency room and the other examined her at the Harborview Sexual Assault Center. *Id.*

A few days later, C.G. was interviewed by a Child Interview Specialist with the King County Prosecuting Attorney's Office. *Id.* at 9. The State later charged Petitioner with three counts of first-degree child rape, one count of first-degree child molestation, and one count of distribution of methamphetamine to a person under age eighteen with sexual motivation. Dkt. No. 12, Exh. 4 at 2.

After a pretrial hearing and over Petitioner's objection, the trial court permitted the State to present evidence of Petitioner's prior acts of sexual abuse with two female minors under the common scheme or plan exception found in Washington Evidence Rule 404(b). Dkt. No. 12, Exh. 3. In 1982, Petitioner pled guilty to indecent liberties pertaining to a sexual assault on his then stepdaughter, Denise Henson. Dkt. No. 12, Exh. 3, App. A. In 1986, a jury found Petitioner guilty of first degree statutory rape and indecent liberties for sexually assaulting his other stepdaughter, Becky Henson.[1] *Id.*

The trial court found that the probative value of Petitioner's prior instances of sexual abuse of young girls was "incredibly high," and that the State had satisfied its burden of proving that the prior acts were substantially similar to the current charged offenses. *Id.* The trial court expressly found 16 similarities between Petitioner's sexual abuse of Denise and Becky and his sexual abuse of C.G., including, for example, isolating young girls from their mothers (whom he had married), the offering and providing of drugs, sexual assault with the use of a sexual device, showing pornographic videos and images, and hiding the sexual device in the victims' mattresses. *Id.* The trial court ruled that the probative value of the prior bad acts outweighed the prejudicial effect, and that the evidence of the prior sexual abuse perpetrated on Petitioner's former stepdaughters could be used by the State to establish a common scheme or plan that tended to disprove Petitioner's claim that C.G. had fabricated or imagined the sexual assaults by Petitioner. The trial court also provided the jury with a limiting instruction in order to minimize the prejudicial effect of the evidence. Dkt. No. 12, Exh. 3, App. B.

The matter proceeded to trial and the jury found Petitioner guilty of all five charges. Dkt. No. 12, Exh. 3 at 3. On June 23, 2006, the trial court sentenced Petitioner to 318 months to life in prison for each of the three counts of first-degree child rape, 198 months to life in

---

[1] The 1986 conviction was ultimately overturned on appeal on procedural grounds. Dkt. No. 12, Exh. 3, App. A.

1 prison for the one count of first-degree child molestation, and 120 months for the one count of distribution of methamphetamine to a person under eighteen with sexual motivation. Dkt. No. 12, Exh. 1. All sentences were to be served concurrently. *Id.*

B. <u>Direct Review</u>

Petitioner filed a direct appeal with the Washington Court of Appeals. Petitioner raised two assignments of error: (1) that the lapse of over 20 years between C.G.'s case and the prior bad acts of sexual abuse rendered the prior acts not relevant as evidence of a common scheme or plan; and (2) no evidence that was presented proved that the substance provided to C.G. was in fact methamphetamine. Dkt. No. 12, Exh. 2.

On November 13, 2007, the Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. Dkt. No. 12, Exh. 4. The Court of Appeals found that the trial court did not err when it admitted evidence of Petitioner's prior bad acts under the common scheme or plan exception found in Washington Evidence Rule 404(b). *Id.* The Court of Appeals agreed with the trial court's findings that the prior bad acts' probative value outweighed their prejudicial effect because the many similarities between the prior acts and C.G.'s case were "so great." *Id.* The Court of Appeals also noted that the trial court did take the 20-year lapse in time between the prior and current acts of sexual abuse into consideration, contrary to Petitioner's claim. *Id.*

The Court of Appeals also held that the evidence presented to prove that the substance provided to C.G. was in fact methamphetamine was sufficient despite a lack of laboratory testing and a negative result from a later drug analysis of C.G.'s hair. *Id.* The Court of Appeals found that C.G.'s detailed testimony describing the substance, how it was smoked, and the effects she felt after it was smoked, Fishler's observations of C.G.'s behavior on specific occasions when C.G. was acting differently, and the state's toxicology expert corroborating C.G.'s and Fishler's testimony was sufficient for a reasonable trier of fact to find that the substance provided to C.G. by Petitioner was methamphetamine. *Id.*

On January 7, 2008, Petitioner filed a petition for review with the Washington Supreme Court. Dkt. No. 12, Exh. 5. On July 9, 2008, the petition for review was denied. Dkt. No. 12, Exh. 6.

C. State Collateral Review

On February 5, 2009, Petitioner filed Personal Restraint Petition ("PRP") with the Washington Court of Appeals. Dkt. No. 12, Exh. 7. In his PRP, Petitioner raised seven grounds for relief. Grounds 1 and 2 alleged Petitioner was denied due process when the trial court held an omnibus hearing and a Rule 3.5 hearing without him being present. Grounds 3 and 4 alleged Petitioner was denied due process when the trial judge and Petitioner's court-appointed attorney were switched numerous times without Petitioner's consent or waiver. Ground 5 alleged Petitioner was denied due process when his request to call an expert witness and to have independent laboratory testing done on all evidence was denied. Ground 6 alleged Petitioner was denied due process when the State failed to prove every element of each charge. Ground 7 alleged that Petitioner's double jeopardy rights were violated when the State presented a witness (Petitioner's stepdaughter Becky Henson) for testimony from a prior case in which the conviction was ultimately overturned on appeal. *Id.*

On March 11, 2009, the Court of Appeals dismissed Petitioner's PRP. Dkt. No. 12, Exh. 8. The Court of Appeals found that ground 6, as it related to the methamphetamine charge, and ground 7 raised the same issues as the two claims raised on Petitioner's direct appeal, and held Petitioner was barred from raising those issues again in a collateral proceeding. The Court of Appeals did, however, address ground 6 as it related to the child rape and child molestation charges, concluding that the evidence at trial was sufficient to establish the elements of the charged offenses. The Court of Appeals summarily dismissed the remaining claims, finding the claims "too conclusory to merit further discussion." *Id.*

Thereafter, Petitioner did not file a petition for discretionary review with the Washington Supreme Court.

REPORT AND RECOMMENDATION
PAGE - 5

D. Federal Collateral Review

On April 23, 2009, Petitioner filed the instant 28 U.S.C. § 2254 petition for writ of habeas corpus with the district court. Dkt. No. 5. Petitioner is currently incarcerated at the Washington Corrections Center in Shelton, Washington.

## III. ISSUES PRESENTED

Petitioner's habeas petition raises seven grounds for relief. Dkt. No. 5. Ground 1 alleges Petitioner was denied due process when the trial court held an omnibus hearing without him being present. *Id.* Ground 2 asserts Petitioner was denied due process when the trial court held a Rule 3.5 hearing without him being present. *Id.* Ground 3 alleges Petitioner was denied due process when the trial judge was switched numerous times without Petitioner's consent or waiver. *Id.* Ground 4 contends Petitioner was denied due process when his court-appointed attorney was changed without Petitioner's consent or waiver. *Id.* Ground 5 asserts Petitioner was denied due process when his request to call an expert witness and to have independent laboratory testing done on all evidence was denied. *Id.* Ground 6 alleges Petitioner was denied due process when the State failed to prove every element of each charge. *Id.* Ground 7 contends that Petitioner's double jeopardy rights were violated when the State presented a witness (Petitioner's stepdaughter Becky Henson) for testimony from a prior case in which the conviction was ultimately overturned on appeal. *Id.*

## IV. DISCUSSION

A. Petitioner's Grounds 1-5 and 7 Were Not Properly Exhausted.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs petitions for habeas corpus filed by prisoners who were convicted in state courts. *See* 28 U.S.C. § 2254. In order for a federal district court to review the merits of a § 2254 petition, the petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A); *Fields v. Waddington*, 401 F.3d 1018, 1020 (9th Cir. 2005). The purpose of the exhaustion doctrine is to preserve federal-state comity which, in this setting,

REPORT AND RECOMMENDATION
PAGE - 6

provides state courts an initial opportunity to correct violations of its prisoners' federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Ex parte Royall*, 117 U.S. 241, 251-52 (1886). A petitioner can satisfy the exhaustion requirement by either (1) fairly and fully presenting each of his federal claims to the highest state court from which a decision can be rendered, or (2) demonstrating that no state remedies are available to him. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). A petitioner fairly and fully presents a claim if he submits it "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted). The Ninth Circuit requires that a habeas petitioner explicitly identify the federal basis of his claims either by identifying specific portions of the federal Constitution or statutes, or by citing federal or state case law that analyzes the federal Constitution. *Id.* Alluding to broad constitutional principles, without more, does not satisfy the exhaustion requirement. *Id.*

Here, grounds 1-5 and 7 of Petitioner's habeas petition were included in his PRP, but he did not seek discretionary review of his PRP with the Washington Supreme Court. Under the exhaustion doctrine, a state prisoner is required to give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process, even if the highest state court's review is discretionary. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Therefore, in order to have properly exhausted grounds 1-5 and 7, Petitioner was required to file a motion for discretionary review of the Washington Court of Appeals' denial of his PRP with the Washington Supreme Court. While Petitioner sought discretionary review with the Washington Supreme Court on direct appeal, he did not include grounds 1-5 and 7 in his direct appeal.[2] Accordingly, grounds 1-5 and 7 of Petitioner's habeas petition were never properly exhausted in state court.

---

[2] Ground 7 of Petitioner's PRP (and his instant habeas petition) is distinct from the first claim raised by Petitioner on direct appeal. Ground 7 asserts that Petitioner's double jeopardy rights were violated when a witness (his stepdaughter Becky Henson) from his 1986 sexual abuse case — which was ultimately overturned on appeal on procedural grounds — was

1    However, because Petitioner is now time-barred from presenting grounds 1-5 and 7 to
the Washington Supreme Court, these grounds have technically satisfied the exhaustion
requirement. Under Washington Rule of Appellate Procedure 13.5(a), Petitioner had 30 days
from the date the Court of Appeals denied his PRP to file a motion for discretionary review
with the Washington Supreme Court. *See* Wash. R. App. P. 13.5(a). On March 11, 2009, the
Court of Appeals dismissed Petitioner's PRP, Dkt. No. 12, Exh. 8, and Petitioner had 30 days
from that date to file a motion for discretionary review. Petitioner failed to do so. Therefore,
since no state avenue is available for Petitioner to now exhaust grounds 1-5 and 7, the
exhaustion requirement is met. *See* 28 U. S. C. § 2254(b); *Coleman v. Thompson*, 501 U.S.
722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets
the technical requirements for exhaustion; there are no state remedies any longer 'available' to
him.") (citing *Engle v. Isaac*, 456 U.S. 107, 125-126, n.28 (1982)); *see also Castille v. Peoples*,
489 U.S. 346, 351 (1989) ("The requisite exhaustion may nonetheless exist, of course, if it is
clear that [petitioner's] claims are now procedurally barred under [state] law").

---

permitted to testify about that case at his trial. In contrast, Petitioner's first claim on direct appeal contended that the trial court's admission of the 20-year-old prior bad acts of sexual abuse as evidence of a common scheme or plan was error and prejudiced defendant, and violated his due process rights. Accordingly, ground 7 of Petitioner's PRP is a different claim that his first claim on direct appeal.

However, even if this Court read ground 7 as the same claim as Petitioner's first claim on direct appeal, the claim fails because "[a] federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). Here, the trial court's decision to admit evidence of Petitioner's prior bad acts was not arbitrary nor so prejudicial that the trial was fundamentally unfair. Washington law permits admission of evidence of prior bad acts under the common scheme or plan exception, *State v. Lough*, 125 Wn.2d 847, 853 (Wash. 1995), and the trial court expressly found 16 commonalities between Petitioner's sexual abuse of Denise Henson and Becky Henson and his sexual abuse of C.G. Dkt. No. 12, Exh. 3, App. A. The trial court properly found that the probative value of Petitioner's prior instances of sexual abuse of minors was "incredibly high." *Id.* Moreover, the trial court provided a limiting instruction to the jury regarding the prior bad acts evidence to minimize the prejudice to Petitioner. Dkt. No. 12, Exh. 3, App. B.

REPORT AND RECOMMENDATION
PAGE - 8

B. **Federal Review of Grounds 1-5 and 7 Is Precluded Because the Grounds Are Procedurally Defaulted.**

The procedural default doctrine is a separate and distinct defense from the exhaustion requirement that bars federal habeas review. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) ("procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserve'"); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 850 (1999) (Stevens, J. dissenting) (discussing the difference between the exhaustion doctrine and procedural default doctrine). Although different and distinct doctrines, the procedural default doctrine and the exhaustion doctrine intertwine when habeas claims, as here, have not been properly exhausted in state court. A procedural default resulting in technical exhaustion of a claim is considered improper exhaustion. *See Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992) (finding that claims exhausted due to procedural default were "not properly exhausted").

A procedural default in state court generally leads to a preclusion of federal habeas review if the last state court rendering a judgment in the case rests its judgment on the procedural default. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002). However, if the petitioner has not presented his federal claims to the state courts, a procedural default need not be expressly relied upon by the state courts before a federal court can determine that federal review is barred due to a procedural default. *Harris*, 489 U.S. at 263 n.9. In that case, the "federal courts may properly determine whether the claim has been procedurally defaulted under state law . . . ." *Id.* at 269 (O'Connor, J., concurring).

Here, the Court finds that grounds 1-5 and 7 have been procedurally defaulted in state court because if Petitioner were to now submit a motion for discretionary review of the Washington Court of Appeals' denial of his PRP to the Washington Supreme Court, the motion would be denied for failing to file it within the mandatory 30-day period. *See* Wash. R. App. P. 13.5(a). Petitioner had 30 days from March 11, 2009, the date the Court of Appeals

REPORT AND RECOMMENDATION
PAGE - 9

issued its decision denying his PRP, to file a motion for discretionary review with the Washington Supreme Court, but he did not do so.

Before federal review is precluded due to a procedural default, however, the state procedural rule must be an "independent and adequate state ground." *See Hanson v. Mahoney*, 433 F.3d 1107, 1113 (9th Cir. 2006). "In order for the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Id.* A procedural default is not "independent" if the state procedural bar depends upon a determination of federal law, and it is not "adequate" if the state courts bypass the procedural rule. *See Harmon*, 959 F.2d at 1461. Where a state court decision denying relief would be based on an independent and adequate state law ground, even a procedural one, a habeas petitioner is procedurally defaulted from bringing his claims to the federal courts. *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004). This is because if state prisoners were allowed to meet the federal habeas exhaustion requirement by procedurally defaulting their claims in state courts, "the comity interests that animate the exhaustion rule could easily be thwarted." *O'Sullivan*, 526 U.S. at 854.

Turning to the instant case, Petitioner has not made any showing that Washington Rule of Appellate Procedure 13.5(a) is not an independent and adequate state law ground. Accordingly, federal habeas review of grounds 1-5 and 7 is precluded because of his procedural default of these claims in state court.

C. <u>Petitioner Fails to Show Cause and Prejudice or a Fundamental Miscarriage of Justice</u>.

If a federal habeas petitioner can show cause for the procedural default in state court and actual prejudice, or a fundamental miscarriage of justice resulting from the alleged federal law violation, federal review of habeas claims is permitted despite the procedural default in state court. *See Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993). To demonstrate cause, a habeas petitioner must show that the procedural default was due to "some objective factor

REPORT AND RECOMMENDATION
PAGE - 10

external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to show prejudice, a habeas petitioner bears the burden of showing not merely that an error created a possibility of prejudice, but that the error worked to petitioner's actual and substantial disadvantage, infecting the entire trial with constitutional error. *Id*. at 494. To qualify for the "fundamental miscarriage of justice" exception, a habeas petitioner must show that a constitutional violation has "probably resulted" in the conviction when he was "actually innocent" of the offense. *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008). Here, the Court finds that Petitioner has not demonstrated cause and prejudice, nor has he demonstrated that he qualifies for the "fundamental miscarriage of justice" exception.

D. <u>Standard of Review for Exhausted Grounds</u>

AEDPA "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A federal habeas petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is "*contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

Under the "contrary to" clause of AEDPA, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Bell v. Cone*, 543 U.S. 447, 452-53 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case, or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). In addition, a habeas petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court examined the meaning of the phrase "unreasonable application of law," ultimately correcting an earlier interpretation by the Ninth Circuit Court of Appeals which had equated the term with the phrase "clear error." The Court explained:

> These two standards . . . are not the same. *The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."* . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

*Lockyer*, 538 U.S. at 75-76 (citations omitted, emphasis added).

In sum, the Supreme Court has directed lower federal courts reviewing habeas petitions to be extremely deferential to state court decisions. A state court's decision may be overturned only if the application is "objectively unreasonable." *Id.* Whether a state court adjudication was reasonable depends upon the specificity of the rule: "the more general the rule, the more leeway courts have[.]" *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

E. <u>The State Courts' Determination of Petitioner's Sufficiency of the Evidence Claim Was Not Contrary To, or Involved an Unreasonable Application of, Clearly Established Federal Law</u>.

The Court finds that Petitioner has properly exhausted his sixth ground for habeas relief in part, as Petitioner presented part of this claim to both the Washington Court of Appeals and the Washington Supreme Court on direct appeal, thereby exhausting his state court remedies.

REPORT AND RECOMMENDATION
PAGE - 12

1  To explain why Petitioner has only exhausted part of this claim, Petitioner's sixth ground for
2  habeas relief alleges he was denied due process because the State failed to prove every element
3  in each charge brought against him. Dkt. No. 5. However, in his direct appeal, Petitioner
4  limited this claim only to the charge of distribution of methamphetamine to a person under
5  eighteen with sexual motivation. Dkt. No. 12, Exh. 2. Therefore, this Court's habeas review is
6  limited only to that properly exhausted claim: that the State failed to prove every element in the
7  charge of distribution of methamphetamine to a person under eighteen with sexual motivation.
8  While Petitioner alleged in his PRP that the State failed to prove every element of each claim
9  (as he alleges in his habeas petition), that entire ground for relief was not properly exhausted.
10 Accordingly, the unexhausted portion of ground 6 that concerns the sexual offenses for which
11 Petitioner was convicted is procedurally defaulted and suffers the same fate as grounds 1-5 and
12 7 of Petitioner's habeas petition.

13 Turning to the exhausted portion of ground 6, a habeas petition alleging insufficient
14 evidence to support a conviction is entitled to relief only if it is determined that "upon the
15 record evidence adduced at the trial no rational trier of fact could have found proof of guilt
16 beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Under AEDPA, a
17 state court's application of the *Jackson* standard is reviewed only to determine whether the
18 "state court's adjudication entailed an unreasonable application of the . . . *Jackson* standard."
19 *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009); *Juan H. v. Allen*, 408 F.3d 1262,
20 1274-75 (9th Cir. 2005); *Bruce v. Terhune*, 376 F.3d 950, 960 (9th Cir. 2004) (O'Scannlain, J.,
21 concurring specially) ("AEDPA . . . clearly mandates not a direct application of *Jackson*, but a
22 deferential review of a state court's application of *Jackson*.").

23 The Court finds that the Washington Court of Appeals' determination that the evidence
24 was sufficient to prove every element of the distribution of methamphetamine charge was not
25 contrary to, or an unreasonable application of, the *Jackson* standard. On direct appeal, the
26 Court of Appeals rejected Petitioner's sufficiency of the evidence claim. Dkt. No. 12, Exh. 4.

1  The Court of Appeals found that despite a lack of laboratory testing and a negative test result
2  from an analysis of C.G.'s hair, the circumstantial evidence presented by the State was
3  sufficient for "any reasonable trier of fact to find guilt beyond a reasonable doubt." *Id.*
4  Although the Court of Appeals did not cite the *Jackson* standard verbatim, the court relied
5  upon Washington case law that adopted the *Jackson* standard. *Id.* The Court of Appeals set
6  forth the elements of the charge that the State was required to prove beyond a reasonable doubt
7  and the evidence presented at trial that satisfied those elements. *Id.* at 10-12. For example,
8  during her testimony, C.G. described the substance that Petitioner had her smoke and how it
9  made her feel and act. C.G.'s testimony was corroborated by her mother and the State's
10 toxicology expert. In addition, while methamphetamine use may be confirmed by testing a
11 user's hair, the State's toxicology expert explained that methamphetamine use may not show
12 up in a person's hair if the use was infrequent or if the amount of methamphetamine ingested
13 was small. In sum, despite the lack of corroboration from the test of C.G.'s hair, the evidence
14 presented at trial was sufficient to prove that the substance C.G. smoked with Petitioner was
15 methamphetamine. Put another way, this Court cannot conclude that the state courts'
16 adjudication of Petitioner's sufficiency of the evidence claim entailed an unreasonable
17 application of the *Jackson* standard. Accordingly, the properly exhausted portion of
18 Petitioner's ground 6 fails.

V. CONCLUSION

For the foregoing reasons, this Court recommends that the petition be DENIED and this case DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 3rd day of September, 2009.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge